# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

HENRY VAN DALEN and
GLORIA VAN DALEN,

    Plaintiffs,

vs.                                                           Case No.: 8:06-cv-103-T-23MSS

SAFECO INSURANCE COMPANY OF
AMERICA, a foreign corporation,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** comes on for consideration of Defendant's Motion for Summary Judgment (Dkt. 19) (the "Motion") and Plaintiffs' memorandum in opposition thereto (Dkt. 22).[1] For the reasons that follow, the Undersigned **REPORTS** and **RECOMMENDS** that the Motion be **DENIED**.

## I.   BACKGROUND

As virtually no discovery has been provided to the Court to assess Defendant's Motion, the facts presented below were derived primarily from Plaintiffs' allegations in their complaint (Dkt. 2) and Defendant's responsive pleading (Dkt. 11).

On June 19, 2004, Defendant issued a homeowners' insurance policy to Plaintiffs for their home in Plant City, Florida. (Dkt. 24-2) The policy provided coverage for

---

[1]This matter has been referred to the Undersigned for a Report and Recommendation pursuant to Title 28, United States Code, Section 636(b)(1)(B)-(C), Fed. R. Civ. P. 72, and Local Rules 6.01(a),(b) and 6.02(a), M.D. Fla. (Dkt. 33).

structural damage to buildings caused by "sinkhole collapse," which is the:

> actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

(Dkt. 24-5 at 1)

In the summer of 2004, Plaintiffs discovered damage to their property allegedly caused by sinkhole activity and reported the same to Defendant through their public adjuster. Thereafter, Defendant retained Windermere Properties and Engineering Services, Inc. ("Windermere") to perform a geotechnical investigation on Plaintiffs' property. On November 17, 2004, Windermere conducted its investigation, which included performing two soil borings on the subject property. One of the borings extended to depths of 103 feet and the other extended to depths of 95 feet. (Dkt. 6 at 14-19) On December 9, 2004, Windermere issued a report in which it concluded that sinkhole activity was the cause of the damage to Plaintiffs' property. On January 4, 2005, Defendant forwarded a copy of Windermere's report to Plaintiffs' public adjuster and by letter indicated that Defendant was awaiting grouting bids on the damage to Plaintiffs' property. Plaintiffs' public adjuster submitted Plaintiffs' sworn proof of loss statement to Defendant two days later.

On March 1, 2005, Defendant sent Plaintiffs a letter acknowledging receipt of their proof of loss statement and made a formal demand for appraisal based on the difference in the amount of loss claimed by Plaintiffs in their proof of loss statement and Defendant's repair estimates. Defendant demanded appraisal pursuant to the policy's appraisal

2

provision which states:

> [i]f you and we do not agree on the amount of loss, including the amount of *actual cash value* or *replacement cost*, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire . . . . The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, . . . shall determine the amount of loss.

(Dkt. 24-4 at 3)

Subsequently, Plaintiffs retained Florida Testing & Environmental Services, Inc. ("FTES") to perform separate geotechnical testing on Plaintiffs' property. FTES submitted a report to Defendant recommending that based on its tests, which established the presence of competent bedrock at depths of 178 feet, Plaintiffs' property would need to be stabilized by grouting and partial underpinning. FTES estimated a total repair cost of $280,350 plus a 5% contingency. (Dkt. 11 at ¶16)

On January 17, 2006, Plaintiffs filed suit against Defendant alleging that Defendant breached its duty under the parties' insurance policy to investigate properly Plaintiffs' claim. (Dkt. 2) Plaintiffs contend Windermere's report to Defendant was incomplete because Windermere failed to follow the American Society for Testing and Materials ("ASTM") standards when performing its borings. That is, Windermere failed to continue its tests until competent bedrock was found. Plaintiffs further alleged that Defendant breached the insurance policy by instituting "prematurely" the appraisal process because there was no disagreement as to the amount of loss, only Defendant's failure to

3

investigate properly Plaintiffs' claim. Additionally, Plaintiffs contend after instituting the appraisal process, Defendant breached the appraisal provision by failing to abide by the orders of the umpire. Defendant denies Plaintiffs' allegations. (Dkt. 11)

Defendant initially moved to dismiss, claiming that Plaintiffs' suit was premature because the insurance policy mandated appraisal, or alternative dispute resolution, as a condition precedent to litigation.[2] (Dkt. 4) Plaintiffs responded that Defendant breached the policy prior to attempting to invoke the terms of the appraisal process and, therefore, could not rely on that contractual term as a basis to dismiss the suit. (Dkt. 6) The district judge reviewed the complaint and found the facts as alleged and accepted as true were sufficient to permit Plaintiffs to proceed on the complaint. Accordingly, the motion was denied. (Dkt. 7) Thereafter, Defendant filed its answer to the complaint. (Dkt. 11)

On this Motion, Defendant again asserts that the appraisal process is a condition precedent to bringing suit. Thus, Defendant contends the Court should enter judgment in favor of Defendant and direct the parties to proceed with the appraisal process.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S.

---

[2]Significantly, Defendant does not contend the parties' insurance policy contained a binding arbitration agreement. See Allstate Ins. Co. v. Suarez, 833 So.2d 762, 765-66 (Fla. 2002) (holding that an unambiguous appraisal provision in an insurance contract may not be construed as an agreement to arbitrate).

317, 324-25 (1986). Entry of summary judgment is mandated, after adequate time for discovery and upon motion "if the nonmoving party cannot sufficiently show an essential element of the case as to which the nonmoving party has the burden of proof." Cornelius v. Town of Highland Lake, 880 F.2d 348, 351 (11th Cir. 1989). Mere allegations of denial are insufficient to meet the burden of opposing summary judgment, and the party resisting summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury; therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in the nonmovant's favor. See id. at 248.

Finally, the relevant rules of substantive law dictate the materiality of a disputed fact. Thus, the decision of summary judgment in this case must be made with reference to the standard of proof applicable to the claims on which the motion is brought. See Rollins v. TechSouth, Inc., 833 F.2d 1525, 1527-1528 (11th Cir. 1987).

### III.   DISCUSSION

Here, the parties agree that the insurance policy governed their conduct following the damage to Plaintiffs' property. The dispute concerns the extent of their respective obligations under the policy following that damage. As stated above, Plaintiffs contend

Defendant breached the policy by failing to investigate fully their claim, prematurely invoking the appraisal process and failing to abide by the appraisal provision once invoked. In response, Defendant contends Plaintiffs had a duty under the policy, once the parties disagreed on the amount of loss, to submit to an appraisal prior to initiating suit. As such, Defendant contends the issues raised by Plaintiffs in their complaint should be submitted to the umpire pursuant to the appraisal provision in the policy.

On a motion for summary judgment, Defendant bears the burden of presenting evidence to the Court to negate any essential element of Plaintiffs' breach of contract claim or identifying portions of the record to demonstrate that Plaintiffs cannot meet their burden of proof at trial. See O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001); Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991). Curiously, Defendant offers no evidence to the Court in support of its Motion.[3] Defendant instead relies on two unsworn statements from individuals whom Defendant apparently would engage to complete the appraisal process, on "admitted facts" attributed to the complaint, on the language of the policy, and on Defendant's own answer, affirmative defenses and petition to compel appraisal which it contends is binding because Plaintiff has "defaulted" by not answering.

None of the proffered "evidence" is sufficient to support the Motion. The Court is generally constrained to consider only such competent evidence as it could consider admissible in trial, for example, sworn statements of witnesses, depositions excerpts, etc..

---

[3] This deficiency may stem from the fact that at the time Defendant filed its Motion, the parties had engaged in approximately four months of discovery with approximately six months remaining in the discovery period.

See Denney v. City of Albany, 247 F.3d 1172, 1190 n.10 (11th Cir. 2001) (stating that in considering a motion for summary judgment, "a court may only consider evidence that is admissible or that could be presented in an admissible form"). Thus, unsworn statements of "witnesses" may not be considered by the Court on this Motion. See Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980) (stating that the court may not consider an unsworn statement in determining the propriety of summary judgment).

Defendant also relies on language it contends is in Plaintiffs' complaint. However, in almost every instance in which the complaint is cited by Defendant for language attributed to Plaintiffs, that language is not found in the complaint. For example, in its statements of undisputed facts, Defendant inaccurately cites to paragraphs five and nine of Plaintiffs' complaint for the proposition that it paid to Plaintiffs "an amount equivalent to the amount determined by [Defendant] to be the amount of loss." (Dkt. 19 at ¶3) Plaintiffs have not alleged they received payment from Defendant for their loss. Additionally, Defendant contends it is undisputed that its demand for appraisal was "timely and appropriate under the policy." (Dkt. 19 at ¶11) However, whether Defendant's demand for appraisal was asserted prematurely is a contested issue in the case and serves as a basis for Plaintiffs' breach of contract claim.

The only competent evidence submitted in support of the Motion consists of the complaint as it actually stands on the record and the provision of the policy relied upon by Defendant on the initial motion to dismiss. This is the same material that was rejected by the Court as sufficient to support entry of judgment for Defendant on the motion to dismiss. (Dkt. 7) Standing alone and viewed in the light most favorable to the Plaintiffs,

it remains insufficient to permit the Court to enter judgment in favor of Defendant.

IV.  **CONCLUSION**

In light of the foregoing, the Undersigned respectfully **REPORTS** and **RECOMMENDS** that the District Court **DENY** Defendant's Motion (Dkt. 19).

Respectfully **RECOMMENDED** in Tampa, Florida on this 2nd day of February 2007.

_____
MARY S. SCRIVEN
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties

8